**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**33.90 ACRES OF LAND, MORE OR LESS, SITUATED IN BEXAR COUNTY, STATE OF TEXAS and John M. Schaefer, et al., Defendants-Appellees.**

**No. 82–1215.**

United States Court of Appeals,
Fifth Circuit.

July 22, 1983.

Edward C. Prado, U.S. Atty., Harold O. Atkinson, Asst. U.S. Atty., San Antonio, Tex., Donald F. Rosendorf, Marvin E. Schneck, William J. Kollins, Dept. of Justice, Land and Natural Resources Div., Appellate Section, Washington, D.C., for plaintiff-appellant.

Seagal V. Wheatley, Edward M. Lavin, San Antonio, Tex., for defendants-appellees.

Before RUBIN, GARZA and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

This case involves the valuation of condemned property. In March 1978, the United States filed a complaint in condemnation and declaration of taking, thereby acquiring title to a 33.9-acre parcel of land owned by John Schaefer, a San Antonio land developer. Trial on the issue of just compensation was held before a jury in September 1981; the jury returned a verdict in the amount of $1,778,104. The United States appeals, arguing that the district court abused its discretion in several respects and that the verdict was not supported by sufficient evidence on the remainder value of the property after the taking. We find no merit to the government's contentions.

The government contends that the district court abused its discretion in excluding as a "comparable sale" the landowner's purchase price. In general, comparable sales provide the best evidence of

market value of condemned property. *United States v. 320.0 Acres of Land (Monroe County),* 605 F.2d 762, 798 & n. 61 (5th Cir.1979). Comparable sales are " 'sales from a willing seller to a willing buyer of similar property in the vicinity at or about the same time [as the taking].' " *Id.* at 798 (quoting *United States v. Trout,* 386 F.2d 216, 223 (5th Cir.1967)).

■ In the immediate case, the court held a pretrial (Monroe County) hearing[1] on the parties' offered evidence of comparable sales. Five or six sales offered by the government were admitted at trial as comparable and relied upon by its two expert witnesses. The government here argues that the district court abused its discretion in excluding evidence of additional comparable sales, *i.e.* the purchase price paid in 1970 and 1971 by Schaefer for several parcels totaling 234 acres, out of which the condemned 33.9 acres were carved. We do not find any abuse of discretion in the trial court's evidentiary exclusion.

■ The time differential of seven or eight years between the offered comparable sales and the government's taking in 1978[2] makes comparison difficult. The record shows that significant economic changes transpired during that period, casting doubt upon the relevance of the earlier transactions. Further, the uses for which the property was suited changed from the time it was purchased by Schaefer. In 1970–71 the property was farm land. In 1978 it was suitable for use as railroad-served industrial property, and this change heavily affected market value. The 33.9 acres taken also differed in boundaries and varied in characteristics from any of the separate 1970–71 purchases which, together, made up the 234-acre parcel owned by Schaefer in 1978. The prior sales were significantly larger (62.6 acres and 170.45 acres) or smaller (2 acres) than the condemned parcel (33.9 acres). The parcels purchased in 1970–71 varied in characteristics, such as accessibility to rail service. The parcel condemned by the government was carved out of two of the parcels, taking much of the available rail frontage. It also included the only level land bordering the railroad from which a spur track could be run without necessitating the building of a costly trestle. We find that these are consequential differences.

We recognize that in general, "[s]ound and just trial practice is to admit as many of the 'most comparable' sales available as is necessary to fairly permit each side to present its argument of fair market value for the jury's consideration." *Monroe County, supra,* 605 F.2d at 798. But the trial court here acted within the bounds of its discretion in excluding the sales at issue, given the above recited time differential and differences in land characteristics. Had the proffered evidence been admitted, the court would have had to provide the jury with a confusing variety of cautionary instructions to account for these differences in considering the earlier purchases as evidence of fair market value. Given the government's introduction into evidence of five or six other comparable sales, as well as the testimony of two expert witnesses in its behalf, "in these circumstances, an evidentiary exclusion might well be preferable." *Monroe County, supra,* 605 F.2d at 801. We cannot find the district court's exclusion an abuse of discretion.

■ Having thus disposed of appellant's most serious contention, we summarily address the remaining three issues raised on appeal. First, we find that the court did not abuse its discretion in admitting evidence that the highest and best use of the subject property before the taking was as

---

1. As set out in *Monroe County, supra,* 605 F.2d at 809, "the judge establishes the 'ground rules' or 'criteria' for the determination of just compensation by the jury." *See United States v. Reynolds,* 397 U.S. 14, 20, 90 S.Ct. 803, 807, 25 L.Ed.2d 12 (1970). The court below thus held a preliminary hearing to determine which sales offered by the parties were properly admissible as comparable.

2. Market value is assessed at the date of the taking. *See, e.g., United States v. Miller,* 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943); *Monroe County, supra,* 605 F.2d at 781.

rail-served industrial property.[3] The government contends that the landowner failed to show the reasonable probability that the land was either physically adaptable for use as rail-served industrial property or that there was a need or demand for such use in the reasonably near future, citing *United States v. 341.45 Acres,* 633 F.2d 108, 111 (8th Cir.1980), *cert. denied sub nom. Bassett v. United States,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). In support of its argument, the government contends that: (1) the land at issue was not zoned for industrial use; and (2) the cost of developing this property for industrial use would have been so high as to render the proposed use unfeasible. While there is evidence in the record in support of both of these contentions, there is also sufficient evidence to support the conclusions 1) that a reasonable possibility of rezoning existed, so that the existing zoning did not preclude a finding of "rail-served industrial property" as the highest and best use; and 2) that industrial development was economically feasible. In light of this evidence, the court did not abuse its discretion.

■] Second, we find no merit to the government's contention that the court abused its discretion in not following the government's request to instruct the jury specifically to consider development costs of the entire tract before the taking. It is well established that if the charge given fairly and adequately covers the material issues, it is not error to refuse to give the specific instructions requested by a party.[4] We have considered the instructions given by the court and find them sufficient. The jury was instructed to consider the costs involved in developing the property to its highest and best use after the taking, not as a separate item of damage but as to the effect of such costs on the value of the remainder of the property. No authority is cited by the government to support its view that there also had to be a specific instruction on development costs of the entire property before the taking. Such costs obviously are part of market value and are covered by all of the evidence introduced in court as to market value, including comparable sales and expert testimony. In consideration of the entire record, and the full instructions which were a fair and balanced presentation to the jury of its task in determining fair market value, we can find no abuse of discretion in the court's refusal to give the specific instruction requested by the government.

Finally, we find that there was sufficient evidence in the record concerning loss of value to the remainder of the property after the taking to support the jury's verdict. The government's argument, that because of appellee's inadequate appraisal methods at trial his evidence was insufficient, is without merit.

AFFIRMED.

---

3. [S]ince a hypothetical, "reasonable man" buyer will purchase land with an eye to not only its existing use but to other potential uses as well, fair market value takes into consideration "[t]he highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future * * * to the full extent that the prospect of demand for such use affects the market value while the property is privately held." *Olson v. United States,* [292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934)]. Thus, "just compensation" is not limited to the value of the property as presently used, but includes any additional market value it may command because of the prospects for developing it to the "highest and best use" for which it is suitable. *Monroe County, supra,* 605 F.2d at 781.

4. *See, e.g., Olton Feed Yard, Inc. v. United States,* 592 F.2d 272, 276 (5th Cir.1979); *McCullough v. Beech Aircraft Corp.,* 587 F.2d 754, 759 (5th Cir.1979).